UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

ALBERT RONALD THOMPSON,          :  Civil Action No.
                                 :  12-6864(NLH-JS)
                                 :
          Plaintiff,             :
                                 :
     v.                          :  **OPINION**
                                 :
BRIDGETON BOARD OF EDUCATION,    :
et al.,                          :
          Defendants.            :
                                 :

---

**APPEARANCES:**

MATTHEW BENJAMIN WEISBERG
PROCHNIAK WEISBERG, PC
7 SOUTH MORTON AVENUE
MORTON, PA 19070
     *Attorney for plaintiff*

ERIC L. HARRISON
METHFESSEL & WERBEL, PC
3 ETHEL ROAD
SUITE 300
PO BOX 3012
EDISON, NJ 08818-3012
     *Attorney for defendants Bridgeton Board of Education and*
     *Terrell Everett*

**HILLMAN**, District Judge

     Plaintiff has brought claims of reverse employment

discrimination on account of race for defendants' failure to

rehire him after he was terminated following a reduction in

force.  Before the Court is defendants' motion for summary

judgment.  For the reasons expressed below, defendants' motion

will be granted.

**I. BACKGROUND**

Plaintiff, Albert Thompson, is a white male who served as an officer in the United States Army during the Vietnam War, and has worked in law enforcement since 1973.  Plaintiff retired from the New Jersey State Police in 1998, after attaining the rank of Sergeant First Class.  On October 13, 1999, defendant Bridgeton Board of Education ("the District") hired plaintiff as an Education Enforcement Officer ("EEO").  Defendant Terrell Everett served as director of human resources for the District from approximately 1998 to 2003, and returned to that position in December 2010.

In a letter dated April 1, 2010, the District notified plaintiff that his position had been abolished pursuant to a reduction in force ("RIF").  Plaintiff was terminated on June 30, 2010.  During his employment, plaintiff always received positive evaluations, and was described in a 2002 evaluation as doing "an outstanding job."

In or about August 2011, defendants publicly advertised two vacancies for EEO positions which were similar to plaintiff's former position.  Plaintiff saw the posting in a newspaper and contacted his former supervisor, Director of Security Robert Stevens.  Stevens told plaintiff that he would like to rehire

2

him and would begin the paperwork to rehire plaintiff.  However, Stevens later advised plaintiff that he would have to interview for the position.  Stevens testified that he told plaintiff that it "would have been nice if [he] could have just recalled [plaintiff]," but that the human resources department advised him that EEOs did not have recall rights so plaintiff would have to apply like everyone else.

The interview committee consisted of defendant Everett, Stevens, elementary school principal Derek Macchia, and high school principal Lynn Williams.  Everett, Macchia, and Williams are all equal employment opportunity Officers.  Everett and Williams are African American.  Stevens and Macchia are white. Because of plaintiff's experience as an EEO, he was selected for an interview.

The committee interviewed plaintiff and three other applicants, Gerald Ward, Jesus Nieves, and Michael Brown.  At the interviews, all applicants were asked the same set of questions, which were read by the same person – Stevens.  As a rule, Stevens did not ask follow-up questions.  Applicants were expected to give full answers to the questions posed.  Each member of the interview committee took notes on his or her impression of the applicants' answers to the questions and

assigned a numerical score to each response.  Everett and Stevens testified that the race of the applicants was not considered or discussed during the interview process.  Williams testified that the District had no affirmative action policy creating a preference for minority candidates; her intention was to hire the best candidate.

At the conclusion of the interviews, members of the interview committee tallied their scores and gave their sheets to Stevens.  The committee ultimately recommended all four applicants but in a ranked order according to numerical score, with Nieves and Brown ranking first and second.  The original score sheets and notes from the interviewers, however, have been lost and the committee members do not recall the exact scores assigned to each candidate.

Plaintiff does not challenge the District's decision to terminate him as part of the RIF.  Rather, plaintiff challenges the District's decision to hire Brown and Nieves both of whom did not have plaintiff's extensive job experience in law enforcement which included 11 years' experience as an EEO.  Plaintiff asserts that Brown and Nieves, who are minorities, were chosen based on their race.

Plaintiff filed claims against defendants for breach of

contract, violations of Title VII, equal protection and violation of the New Jersey Law Against Discrimination. Plaintiff also requests sanctions on ground of spoliation concerning the lost interview notes and score sheets.

## II.  DISCUSSION

### A. Jurisdiction

The Court has subject matter jurisdiction of this case pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  The Court exercises supplemental jurisdiction over plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

### B. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56.

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).  Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C. Spoliation**

Plaintiff argues that the missing interview notes creates an issue of spoliation and requests spoliation sanctions. Spoliation generally concerns situations where a party has altered, destroyed, or failed to produce evidence relevant to an issue in a case. Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012) (citing Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995)). "Spoliation occurs where: [1] the evidence was in the party's control; [2] the evidence is relevant to the claims or defenses in the case; [3] there has been actual suppression or withholding of evidence; and, [4] the duty to preserve the evidence was reasonably foreseeable to the party." Bull, 665 F.3d at 73.

Defendants concede that plaintiff has met elements one and two. They deny, however, that they intentionally discarded or misplaced the interview notes, and argue that the duty to preserve attached when they received notice of plaintiff's EEOC charge on October 26, 2011.

In support of the third element, plaintiff presents evidence that in response to discovery requests, defendants searched for the interview file, but could not locate it. Plaintiff argues that defendants have not offered any reason for why the file was lost or destroyed.

7

Defendants respond that plaintiff has not shown actual
suppression or withholding of evidence and, therefore, fails to
prove the third element.  Defendants refer to the testimony of
Everett who stated that he did not know what happened to the
notes taken by the interviewers.  Everett testified that he
would typically collect the notes and other paperwork after an
interview, but that the collection of notes after any interview
was inconsistent.  Everett testified that he looked in the HR
department files for the notes of the interview for the EEO
position, but was unable to locate them.  Defendants were able
to locate the form on which the interviewers ranked the four
candidates, as well as the sheet that listed all the questions
asked of each candidate.

Although the interview notes are missing, testimony from
each of the interviewers was submitted regarding what they
recalled from the interviews.  Two of the interviewers, Stevens
and Macchia, recalled that during the interview, plaintiff did
not elaborate on the questions asked.  Stevens stated that his
scoring of plaintiff was influenced by plaintiff's brief
responses, which lacked detail.  Another interviewer, Williams,
testified that she recalled being impressed with Nieves'
responses, but did not recall plaintiff's interview.  The fourth

interviewer, Everett, testified that he could not recall any of the responses provided by any of the candidates.

Although the missing interview notes may appear suspect, there is no indication, other than speculation, that they disappeared intentionally, or after a duty to retain arose. Although Everett testified that he typically collects the notes and keeps them with the interview file, he stated that there are "inconsistencies" with this practice.  He testified that he looked for the notes and was not able to locate them.  This is unlike a situation where files or emails were permanently deleted in a multi-step process that could show intent to destroy.  See sanofi-aventis Deutschland GmbH v. Glenmark Pharmaceuticals Inc., No. 07-5855, 2010 WL 2652412, at *3 (D.N.J. July 1, 2010) (deleting files can constitute spoliation of evidence).

Defendants did produce the form showing the rank order of each of the candidates.  Although the notes taken by the interviewers were not produced, plaintiff has not provided any evidence that could suggest the notes would compel a different ranking order.  Plaintiff presented no testimony from the interviewers that could show that any of them were impressed with plaintiff's interview, that they ranked him higher than the

other candidates,[1] or that the ranking of the candidates were not what they recalled.

In support of the fourth element, plaintiff presents evidence that defendants received a letter dated August 22, 2011, from plaintiff raising issues of discrimination and requesting a hearing.  Plaintiff also asserts that he filed an EEOC complaint on or about August 24, 2011.  Defendants respond that plaintiff did not allege discrimination in either his August 22, 2011 letter or at his September 13, 2011, grievance hearing.  Defendants argue that the first notice that plaintiff was alleging discrimination was receipt of the October 25, 2011 Notice of Charge from the EEOC.  Defendants argue that the duty to preserve arose on October 26, 2011, the day the EEOC Charge was received and that plaintiff presented no evidence that the loss or destruction of the notes occurred after October 26, 2011.

Plaintiff's August 22, 2011 letter does not raise "issues of discrimination."  Rather, it outlines plaintiff's belief that since he was "RIF'd" he would be preferred in the event of a recall.  Plaintiff also does not provide any evidence that he

---

1 Plaintiff asserts that Stevens ranked him higher than Brown. Stevens' testimony, however, does not support this conclusion. See discussion II.E, infra.

intended to raise a discrimination claim during the grievance hearing.  The only evidence presented that raises a discrimination claim is the EEOC Charge.  Defendant admits that it had notice of plaintiff's discrimination at that time.  See Tabon v. University of Pennsylvania Health System, No. 10-2781, 2012 WL 2953216, at *2 (E.D.Pa. July 20, 2012) ("In employment discrimination cases, a duty to preserve arises when the defendant receives notice of an EEOC charge.").

Thus, although the duty to preserve the evidence was reasonably forseeable, there is no evidence that such a duty arose prior to receipt of the EEOC Charge.  After the duty to retain the notes arose, there is no evidence that defendants deliberately destroyed the interview notes.

Plaintiff is also requesting that the Court impose "spoliation sanctions" against defendants for their failure to retain the interview notes.  An analysis to impose spoliation sanctions, however, is separate from any analysis regarding spoliation.  Id. at 73, n. 5 ("Though there is some overlap between the two, there are distinctive elements of each."). "[K]ey considerations in determining whether such a sanction is appropriate should be: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice

11

suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." Schmid v. Milwaukee Electric Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994)

Plaintiff requests sanctions in the form of denial of summary judgment, entry of judgment in plaintiff's favor, or an adverse inference at trial. An adverse inference does not arise "when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." Brewer, 72 F.3d at 334. Rather, "it must appear that there has been an actual suppression or withholding of the evidence." Id.

Even if spoliation occurred, spoliation sanctions are not warranted. Although defendants are at fault for not being able to locate the notes since the notes were in their possession, plaintiff has presented no evidence that could prove that defendants intentionally destroyed the interview notes. Plaintiff is not seriously prejudiced by the lack of interview notes since he was able to depose each of the interviewers. Although not all could recollect what transpired during the

12

interview, none of them testified that plaintiff interviewed well.  Therefore, the spoliation sanctions requested by plaintiff are denied.

**D. Breach of Contract**

Plaintiff states in his response that he voluntarily dismisses his breach of contract claim with prejudice. Therefore, this claim is dismissed and the Court renders no decision on that claim.

**E. Title VII – Failure to Rehire**

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  A claim of race discrimination under Title VII uses the burden shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 803-05 (1974).  Under that framework, a plaintiff must first establish a *prima facie* case. To prove a *prima facie* case, plaintiff must show: (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from

13

persons of complainant's qualifications.[2]  McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824.  The elements of a *prima facie* case depend on the facts of the particular case, and it cannot be established on a one-size-fits-all basis.  Jones v. School Dist. of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999).

If the plaintiff presents a *prima facie* case, the burden of production then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection."  Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997).  "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  Fuentes v. Perskie, 32 F.3d

---

2 The fourth element is sometimes characterized as "non-members of the protected class were treated more favorably."  Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 523 (3d Cir. 1992)), abrogated, in part, on other grounds, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).  Here, plaintiff does not challenge defendants' standard for a *prima facie* case.  Nonetheless, the Court notes that the circumstances in each case are different so that not only will the Court consider whether the position remained open and the employer continued to seek applicants, but also whether persons of the non-protected class were treated more favorably.  McDonnell Douglas, 411 U.S. at 802 n.13 ("[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."); Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997).

759, 763 (3d Cir. 1994).  "The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id.  This is a light burden.  Id.

Once the employer answers its relatively light burden by articulating a legitimate, nondiscriminatory reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation was merely a pretext for its actions, thus meeting the plaintiff's burden of persuasion.  Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 319 (3d Cir. 2000) (citing Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 2097 (2000)).  The plaintiff must:

> demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence" and hence infer "that the employer did not act for [the asserted] nondiscriminatory reasons."

Bray, 110 F.3d at 990 (citing Fuentes, 32 F.3d 765)(emphasis in original).

"An inference of pretext may arise if the plaintiff can

15

raise suspicions with respect to the defendant's credibility or the employer's treatment of the employee." Id. (citing Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638-39 (3d Cir. 1993)). "The inference, along with the components of the plaintiff's prima facie case, allow a jury to conclude that the employer was actually motivated by illegal bias, but it does not compel that result." Id. (citing Sheridan, 100 F.3d at 1066-67). A plaintiff cannot prevail under Title VII merely by establishing that the employer made a decision that was wrong or mistaken. Id. (citing Fuentes, 32 F.3d at 765).

In reverse discrimination cases, the Third Circuit has clarified that, "all that should be required to establish a prima facie case in the context of 'reverse discrimination' is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." Besko v. New Jersey Juvenile Justice Com'n, --- Fed.Appx. ----, 2014 WL 929171, at *3 (3d Cir. 2014) (citing Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1999)).

Defendant does not challenge a conclusion that plaintiff presents a *prima facie* case. Plaintiff has presented sufficient evidence that despite having more job related experience than

16

the other two minority candidates, he was not selected for the position. Therefore, plaintiff has presented evidence in support of his *prima facie* case and the burden now shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the failure to hire plaintiff.

Defendants state that the reason plaintiff was not selected was because of his poor performance during the interview, specifically, his failure to elaborate or expand on his answers. Poor performance in an interview is recognized as a legitimate nondiscriminatory reason for failure to hire or promote. Carr v. New Jersey, 534 Fed.Appx. 149, 152 (3d Cir. 2013); McCann v. Astrue, 293 Fed.Appx. 848, 852 (3d Cir. 2008); Green v. Potter, No. 08-597, 2010 WL 2557218, at *5 (D.N.J. June 23, 2010). Defendants have presented evidence that although the interviewers considered him qualified and listed him as a recommended candidate, he was ranked third and only two positions were available.  There is no dispute that all the candidates were asked the same questions, by the same person. The interviewers took notes on the responses, the scores were tallied, and the two highest scoring candidates were offered the positions.  Two of the interviewers, Stevens and Macchia, testified that plaintiff failed to adequately answer the

17

questions.  Thus, defendants have articulated a legitimate, nondiscriminatory reason for the failure to hire plaintiff and the burden shifts back to plaintiff to show that defendants' explanation was merely a pretext for its actions.

Plaintiff argues that defendants' reason for not hiring him – poor performance during the interview – is implausible because: (1) defendants failed to produce the interview notes; (2) Stevens testified that he scored plaintiff higher than at least one of the other candidates; (3) none of interviewers recalled how plaintiff's answers were inferior; and (4) the interviews were only fifteen to twenty minutes and it is impossible to accept that plaintiff's answers were poorly crafted as compared to the others.[3]

While failure to produce the interview notes is not sanctionable under these facts, it must be determined whether

_____

3 Plaintiff also argues that he was the most qualified candidate for the job.  There is no dispute that the other two candidates, Nieves and Brown, had less experience than plaintiff in educational law enforcement.  However, defendants ranked the candidates based on their interview performance, not employment history.  See Carr, 534 Fed.Appx. at 152 (finding "... that the panelists' scoring of candidates was based entirely upon candidates' responses to interview questions; given [the plaintiff's] weak performance at this stage of the selection process, the panelists had no basis for considering the applicability or relevance of his experience or knowledge for the position.").

the lack of interview notes "... demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons...." <u>Fuentes</u>, 32 F.3d 765.[4]  The lack of interview notes does not make defendants' decision implausible.  <u>See</u> <u>Sarmiento v. Montclair State Univ.</u>, 285 Fed. Appx. 905, 911 (3d Cir. 2008) (finding that the plaintiff failed to cast meaningful doubt on any of the core facts underlying the nondiscriminatory rationale proffered by the defendant, even though the defendant admitted that it destroyed the hiring committee notes and lost or destroyed portions of plaintiff's application materials).  Plaintiff produced no evidence that the notes would indicate that he performed better during the interview than the top two candidates.  Plaintiff produced no evidence that there was

---

4 In <u>Carr</u>, the Third Circuit found that the interview notes and panelists' deposition testimony were consistent with the defendants' nondiscriminatory explanation that Carr interviewed poorly and failed to apply his experience to the questions asked.  However, in this case, since defendants failed to produce the interview notes, the Court cannot simply rely on the reasoning in <u>Carr</u> and must determine whether plaintiff can overcome defendants' reason. In essence, although the Court does not impose spoliation sanctions, the failure to produce the notes has had a detrimental effect on defendants since the decision in <u>Carr</u> cannot automatically provide them with case law to establish a legitimate, non-discriminatory reason.  Rather, plaintiff has a better opportunity to try to show their reason is pretext.

19

anything in the interview notes that could possibly contradict the testimony of the interviewers or the final ranking order of the candidates.  Thus, there is no evidence that absence of the interview notes is evidence that defendants' reason for not hiring plaintiff was pretext.  See id. (agreeing with District Court that, even if plaintiff could satisfy the elements of a spoliation claim with regard to the missing hiring committee notes, defendant would still be entitled to summary judgment because while the missing notes might have been relevant to his Title VII claim, the absence of the evidence did not create a genuine issue as to pretext).

The second challenge to defendants' proffered reason is plaintiff's argument that Stevens testified that he scored plaintiff higher than at least one of the other candidates.  A review of the deposition transcript reveals that Stevens did not testify that he gave plaintiff a higher overall score.  Stevens testified that he could not remember the numerical rank he gave to the candidates, but believes that he had "all three candidates fairly close."  Stevens further testified,

> I still believe that I scored Nueves (sic)
> highest of all the candidates myself
> personally.... I may have had Thompson higher
> than Brown on some of these numbers, and which
> would have indicated on an overall score, but
> there were three other people.  I don't know

> that there was – if there was a major disparity,
> then there's always a conference about that ....
> We'd have to talk about that... . So I don't
> think that there were major disparities.... I
> guarantee you if it was a dead heat that –
> between Mr. Thompson and the other top
> interviewer – interview person, then I would
> have given preference to Mr. Thompson because,
> as you say, it would make perfect sense.  But
> that would be for a dead heat.

Thus, Stevens testified that he scored Nieves the highest and that if there had been a tie, he would have given preference to Thompson.  Stevens did not testify that he gave plaintiff a higher overall score.  Even so, Stevens was one member of a four person committee.  There is no evidence the other members gave plaintiff a higher score than the top two candidates.  As for the final candidate, clearly plaintiff was scored higher since he was ranked third, out of four.

The third challenge to defendants' proffered reason is plaintiff's argument that none of the hiring committee members can recall anything substantive as to why plaintiff's answers were inferior as compared to the other candidates in light of his extensive background.  The fact that the interviewers cannot recall plaintiff's exact answers is not evidence of pretext or a discriminatory intent.  Macchia testified that he did not rank plaintiff as first or second.  Macchia also recalled that

plaintiff gave one or two word answers to a question regarding
gang activity.  Plaintiff does not deny this.  Stevens testified
that he recalls being disappointed with plaintiff's answers in
the interview.  Williams remembers being impressed with Nieves.
Everett testified that he could not recall any of the answers by
the candidates.  Thus, there is evidence that plaintiff
interviewed poorly.  There is no evidence to rebut this.[5]  The
fact that the interviewers cannot recall plaintiff's exact
answers, but only recall an overall poor performance, does not
show discriminatory intent.

Plaintiff's final argument, that the interview only lasted
fifteen to twenty minutes, also fails to show discriminatory
intent.  Plaintiff was not given less time than any of the other
candidates.  All the candidates were given the same amount of
time to interview, and were asked the same questions by the same
individual.  There is no evidence that plaintiff needed more
time to answer his questions.

Therefore, plaintiff has failed to show sufficient evidence
from which a reasonable juror could conclude that defendants'

_____

5 Plaintiff testified that he wasn't interviewing for "Happy the
Clown."  If the interviewers were looking for a certain level of
enthusiasm, plaintiff's short answers would not have created the
impression of an enthusiastic candidate.

legitimate, nondiscriminatory reason was pretext.  Plaintiff's
Title VII claim will be dismissed.  <u>See</u> <u>St. Mary's Honor Center</u>
<u>v. Hicks</u>, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749  (1993) ("...
the Title VII plaintiff at all times bears the "ultimate burden
of persuasion.") (citations omitted).

**F. Equal Protection Pursuant to § 1983**

The <u>McDonnell Douglas</u> framework applied in Title VII cases
is applicable to allegations of racial discrimination under 42
U.S.C. § 1983.  <u>Stewart v. Rutgers, The State University</u>,
120 F.3d 426, 432 (3d Cir. 1997).  Both parties state that they
are relying on the arguments they made under plaintiff's Title
VII claim with regard to plaintiff's equal protection claim
based on race discrimination.  Accordingly, for the same reasons
the Court provided for dismissing plaintiff's Title VII claim,
his equal protection claim shall be dismissed as well.

**G. New Jersey Law Against Discrimination**

Under New Jersey law, the <u>McDonnell Douglas</u> burden shifting
framework is applied as a general framework to cases arising
under the New Jersey Law Against Discrimination ("NJLAD").  <u>See</u>
<u>Grigoletti v. Ortho Pharmaceutical Corp.</u>, 570 A.2d 903, 912
(N.J. 1990).  However, in reverse discrimination cases, the
first-prong of the McDonnell Douglas is altered to require the

23

plaintiff to show that his employer was the "unusual employer who discriminates against the majority". Erickson v. Marsh & McLennan Co., Inc., 569 A.2d 793, 799 (N.J. 1990) ("Thus, when a complainant is not a member of the minority, courts have generally modified the first prong of the McDonnell Douglas standard to require the plaintiff to show that he has been victimized by an 'unusual employer who discriminates against the majority.'"). As modified, the plaintiff must establish: (1) the defendant is the unusual employer who discriminates against the majority; (2) he applied for a position for which he was objectively qualified; (3) he was not hired for that position; and (4) the employer filled the position with a similarly qualified person. See Gerety v. Atl. City Hilton Casino Resort, 184 N.J. 391, 399 (2005); Bergen Commercial Bank v. Sisler, 157 N.J. 188, 218 (1999).

There is no dispute that plaintiff is a member of a class that has not historically been discrimination against. Therefore, to prove his NJLAD claim, plaintiff must present evidence that could show that defendants are the unusual employer who discriminate against the majority.

Plaintiff states that after he contacted Stevens about the job opening, Stevens told him that he "absolutely" would want to

24

rehire him and would get the paperwork started to rehire him.
Stevens later contacted plaintiff and told plaintiff he would
have to submit an application and interview for the position and
remarked that plaintiff would have to "play their silly games."

Stevens' remarks that plaintiff would have to play the
"silly game" of going through the application process and
participating in an interview is not evidence of racial
discrimination.  Rather, it seems that Stevens was unaware of
the hiring procedures at the time he spoke to plaintiff.  Thus,
plaintiff has not presented evidence that defendants are the
unusual employer who discriminate against the majority.  See
Piantadosi v. Public Service Elec. and Gas Co., 2011 WL 3177318,
at *6 (N.J.Super.A.D. July 28, 2011) (concluding that plaintiff
did not present evidence of race-based conduct or that his
employer discriminated against the majority based on the
examples of his employer: "ordering their termination without a
thorough investigation and corroborating evidence, their
termination occurred a few months after several African-American
employees filed a complaint alleging racial discrimination in
the PSE&G workplace, an upper level manager stated plaintiffs
were fired 'to do the righteous thing for the minority,'
African-American employees received less severe discipline than

25

them, and someone from PSE&G offered reinstatement to Piantadosi if he implicated Larmer in the mock lynching incident.").

Accordingly, plaintiff's NJLAD claim shall be dismissed.

## III. **CONCLUSION**

Plaintiff has not provided sufficient evidence to defeat summary judgment on his race discrimination claim.  Nothing about plaintiff's proffered evidence shows that defendants' failure to hire him was motivated by his race.  Without providing such evidence, plaintiff cannot overcome defendants' legitimate reasons for hiring the two highest ranked candidates. Consequently, summary judgment must be entered in favor of defendants.  An appropriate Order will issue.


Date:    March 27, 2014              s/Noel L. Hillman

At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

26